IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LOBE SCIENCES, LTD.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MIAMI,<br><br>　　　　　　Defendant. | Case No. 1:23-cv-20288<br><br>**COMPLAINT** |

　　　　Plaintiff, LOBE SCIENCES, LTD. ("Lobe") by way of Complaint against Defendant, UNIVERSITY OF MIAMI ("University"), states:

## PARTIES

　　　　1.　　Plaintiff Lobe is a Canadian company with a principal place of business at Suite 1400-1199 West Hastings Street, Vancouver, British Columbia, Canada.

　　　　2.　　Defendant University is a not for profit corporation established under the laws of the State of Florida, with its principal place of business at 1320 S. Dixie Highway, Gables One Tower #650, Locator Code 2960, Coral Gables, Florida 33146.

## JURISDICTION AND VENUE

　　　　3.　　The Court has jurisdiction over this case under 28 U.S.C. § 1332. Lobe is a foreign Canadian entity, the University is based in Florida, and therefore the parties are diverse. The matter in controversy exceeds the sum of $75,000.

　　　　4.　　Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) and 28 U.S.C. § 1391(c) because the Defendant resides in Florida and some or all of the events giving rise to these claims arose in Florida.

## FACTUAL BACKGROUND

5. On or about September 1, 2020, Eleusian Biosciences Corp. ("Eleusian"), and the University executed a Collaborative Research Agreement" ("Agreement"). The University agreed to provide pre-clinical research on behalf of Eleusian related to the treatment of post-traumatic stress disorder ("PTSD") and/or traumatic brain injury with PTSD.

6. In particular, the study was designed to examine a novel combination of products administered orally (medicines), and to determine whether those medicines could be given safely and produce an affect related to the treatment of PTSD and traumatic brain injury with PTSD ("Study").

7. Eleusian and the University agreed to conduct rodent studies to determine the effectiveness of the medicines referenced in the Study documents. These documents were detailed as to the animal behaviors and reactions to be studied and the criteria to be evaluated and recorded. These documents dictated for the University what level of analysis was necessary to meet its contractual obligations.

8. The rodent mice were split into five groups, which would be studied during the life of the Study:

    a) No exposure;

    b) Sham fluid percussion plus PTSD trigger;

    c) Fluid percussion plus PTSD trigger;

    d) Blast plus PTSD trigger; and

    e) Repeated blast alone.

Each group then was divided into dosing paradigms: vehicle alone; and the medicine being studied. A sham or placebo course was also supposed to be concurrently conducted and the results of these exposures properly recorded.

9. Per Section 4.4 of the Agreement, the University was solely responsible for procuring all "drugs and other medical materials" necessary to perform the Study.

10. Pursuant to Section 6.2 of the Agreement, the University agreed to provide Eleusian "with quarterly written reports as to the status of the [Study] and the Results from the prior quarter."

11. As defined in Section 6.1 of the Agreement, Results meant "all data from testing undertaken in connection with the [Study]."

12. Section 8.1 of the Agreement also contained a termination clause whereby any party could terminate the Agreement if in its sole judgment determined the Study would not achieve a positive outcome. From the prospective of Eleusian, the timely tender of all study data would allow it to make an educated decision whether to continue funding of the Study being conducted by the University.

13. Eleusian agreed to pay $1,264,756.00 to the University in installments pursuant to the Agreement. Eleusian made what amounted to the first of three payments under the contract totaling $758,853.60 but delayed further payment given the failures of the University as herein set forth.

14. The Agreement's original term was from September 1, 2020 through August 31, 2021.

15. On or about November 15, 2020, Eleusian and the University executed Amendment 1 to the Agreement, addressing a series of mergers, acquisitions, and name changes regarding

Eleusian, whereby Lobe in lieu of Eleusian became the sponsor of the Study, along with its associated rights under the Agreement. All other terms and conditions from the original Agreement were still in force.

16. On or about October 28, 2021, Lobe and the University executed Amendment 2 to the Agreement, extending the term of the Agreement to May 31, 2022. All other terms and conditions from the original Agreement were still in force.

17. Amendment 2 to the Agreement did call for additional payments but when the University was called upon to make full disclosure of all scientific data then having been derived from the continued Study, and it did not do so, the additional payments were halted.

18. To date, despite making both contractual promises to provide quarterly reporting as to all scientific data derived from the Study, and to allow Eleusian/Lobe the right to decide whether to continue Study funding, the University has refused to tender interim quarterly data and instead demanded full Study payment before release of any data.

## FIRST COUNT
### (Breach of Contract)

19. Lobe repeats the foregoing allegations as if set forth at length herein.

20. The University was behind the Study's schedule almost immediately from the onset of the Agreement.

21. By January 2021, almost *four months after* the Agreement was executed, the University had just *ordered* the animals (mice) to be used in the Study.

22. For nearly nine months, despite Lobe's multiple overtures to the University, no data from the Study (beyond fleeting email references) was provided to Lobe.

23. In September 2021, after being paid over $750,000, the University provided a short PowerPoint to Lobe, which focused on one portion of the Study. This information, while of

interest, was inadequate to give scientifically significant insights on the potential benefits of the medicines being evaluated and was woefully short of the University's own custom and practice in the performance of prior similar studies involving predecessor entities to both Eleusian and Lobe.

24.     While the University thereafter provided some reporting in the nature of basic accounting data, the University still to this day, despite repeated requests, has not provided *scientific data* from testing undertaken in connection with the Study.

25.     By its breach of contract, the University prevented Lobe from being able to decide if the Study warranted continuation beyond payments already made.

26.     The detail and sufficiency of any information that was tendered was also deficient as they did not include adequate financial details as contemplated by the Agreement.

27.     The University had an obligation to perform its obligations in good faith under the parties' Agreement.

28.     The University acted in bad faith and breached the parties' Agreement by not delivering all interim results from the Study and yet insisting on full payment.

29.     When the University failed to timely perform, Lobe was forced to move onto evaluation of other medicines and possible therapies and no longer needs or can use the data from the Study – even assuming the data has been properly accumulated and summarized.

30.     As a result of the University's breaches of contract, Lobe has suffered damages in the amount of $758,853.60.

**WHEREFORE**, Plaintiff Lobe Sciences Ltd. demands the entry of judgment in its favor for all damages caused by the breach of contract committed by Defendant University of Miami,

together with attorney's fees, interest, costs of suit, and any other relief as the court deems just, as allowed by applicable law or rule.

## SECOND COUNT
### (Unjust Enrichment)

31. Lobe repeats the foregoing allegations as if set forth at length herein.

32. In the Summer 2021, the University failed to procure adequate supplies of psilocybin, an integral material for the Study, despite the fact the University had an obligation pursuant to the Agreement to procure all materials necessary for the Study.

33. The costs of materials was already reflected in the cost that Lobe was paying for the Study pursuant to the Agreement.

34. Lobe, at its own expense, spent over $50,000 in order procure additional psilocybin so the Study could continue.

35. The University failed to reimburse Lobe for its purchase of the necessary psilocybin, and was unjustly enriched.

36. In addition to the foregoing, the University has received payments totaling $758,853.60 and in return has tendered no scientifically sufficient data to evaluate the efficacy of the Study allegedly performed by the University. The receipt of these monies substantively and unfairly enriched the University given it refused/failed to tender the data it was obligated to supply.

37. Accordingly, the University has been unjustly enriched both as to free access to the medicines it was to otherwise have purchased and studied, and by the receipt of significant monies paid for data reporting it refused/failed to supply.

**WHEREFORE**, Plaintiff Lobe Sciences, Ltd. demands the entry of judgment in its favor for all damages caused by the conduct of Defendant University of Miami, together with attorney's fees,

3056083.2 117618-108183

interest, costs of suit, and any other relief as the court deems just, as allowed by applicable law or rule.

Dated: January 25, 2023
      West Palm Beach, FL

**GIBBONS P.C.**
Attorneys for Plaintiff

s/ Philip W. Crawford
Philip W. Crawford, Esq.
Fla. Bar ID #: 99361
2054 Vista Parkway
Suite 400
West Palm Beach, FL 33411-4309
Direct: 561-537-7600
Fax: 561-584-6875
pcrawford@gibbonslaw.com

3056083.2 117618-108183